## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## EASTERN DIVISION

| | | |
|---|---|---|
| **ROBERT RESTER,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **CIVIL ACTION NO. CV-03-PT-0583-E** |
| | ) | |
| **McWANE, INC.,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM OPINION

This cause comes on to be heard upon Defendant McWane, Inc.'s Motion to Dismiss

filed on December 21, 2004.

## FACTS AND PROCEDURAL HISTORY[1]

Plaintiff Robert Rester ("Rester") is a United States Citizen and a resident of Alabama.

(Amd. Cmpt. ¶ 3).  Defendant McWane, Inc. ("McWane") is an Alabama corporation with its

principal place of business in Birmingham, Alabama.  (*Id.* ¶ 4).  McWane manufactures and

distributes pipe and valve products.  (*Id.* ¶ 5).  Rester was employed by McWane from October

1978 through September 2002.  (*Id.* ¶ 6).  Initially, Rester was employed as a mill right on or

about October 1, 1978 in McWane's Birmingham, Alabama, M&H Valve plant.  (*Id.* ¶ 10).  He

was promoted to maintenance supervisor on or about February 1, 1979.  (*Id.* ¶ 11).  From 1990

though 1996, Rester worked as plant manager of McWane's Canada Pipe plant in Ontario,

Canada.  (*Id.* ¶ 13).  In 1996, Rester returned to McWane's Anniston, Alabama Union Foundry

---

[1] Many of the background facts are given as they are alleged in the Amended Qui Tam
Complaint.

1

plant and performed the job of maintenance manager. (*Id.* ¶ 14). On or about January 1, 1999, Rester moved to McWane's Birmingham plant, where he was promoted to plant manager. (*Id.* ¶ 15). On or about February 1, 2001, Rester was demoted to maintenance supervisor of the Union Foundry plant. (*Id.* ¶ 17).

Rester alleges that, during his employment with McWane, he gained personal knowledge that the company engaged in several violations of federal law. Rester asserts the following: during the time he worked in the Canada Pipe plant, McWane dumped dirty and untreated water in Lake Ontario (Amd. Cmpt. ¶ 13); when he worked at the Birmingham plant, McWane dumped traverse water in nearby recreational water sources and switched water samples to conceal pollutants in violation of EPA standards (*Id.* ¶ 16); the Union Foundry division spilt oil, paint and diesel fuel onto the grounds of the facility, intentionally dumped traverse water in nearby water sources and engaged in various occupational safety hazards (*Id.* ¶ 19).

The Amended Complaint alleges in general terms that, at the direction of corporate management, McWane "committ[ed] false claims and engag[ed] in various fraudulent activities including environmental and occupational safety statutory wrongs in violation of both the Occupational Safety and Health Act, 29 U.S.C.A. §§ 664-665, and the Comprehensive Environmental Response, Compensation and Liability Act, 42 U.S.C.A. § 9602." (Amd. Cmpt. ¶¶ 20-23, 26).[2] More specifically, Rester claims that, from 1999 to 2001, "McWane falsified water clarification tests and submitted same to the Environmental Protection Agency (EPA) and

---

[2] Rester further alleges that, during his employment, his knowledge of defendant's fraudulent and unlawful activities caused him to "fear[] for his job and safety." (Amd. Cmpt. ¶ 23). According to the Amended Complaint, Rester feared retaliation if he disclosed the company's wrongdoing to the public. (*Id.*) Rester was eventually demoted and terminated by the defendant. (Amd. Cmpt. ¶ 25).

Alabama Department of Environmental Management (ADEM.)." (*Id.* ¶ 30).  Had the actual results of the test been given to the EPA or ADEM, Rester asserts, McWane could have been fined under both state and federal law.  (*Id.*)  Rester further alleges that: McWane sold defective pipe to the United States Government and concealed the defects (*Id.* ¶ 31); in an effort to speed production, McWane removed guards and covers from conveyer belts in violation of OSHA regulations (*Id.* ¶ 32); McWane engaged in various other OSHA violations and submitted yearly audits to the Federal Government which contained misrepresentations about EPA and OSHA violations (*Id.* ¶ 33); and McWane falsified various other documents and reports to the Government (*Id.* ¶ 34).

In his affidavit, Rester testified as follows:

> From 1999 to 2001, I worked at the McWane plaint in Birmingham.  During part of this time, I was the plant manager.  In order to speed production, water clarification tests were falsified and given to the EPA and ADEM.  If the actual results of these tests were produced to the EPA and ADEM, McWane would have been fined under both federal and state law.  Also, the regulators would have stopped production to force McWane to fix the problems associated with the falsifications of the tests.  This would have adversely affected profits for the company.

> Also, as plant manager, I was aware that McWane sold pipe to the United States Government through various distributors.  Often, if pipe was being sold [*sic*] the Government, we were told to put American flags on the pipe.  Because we were told to produce the pipe as fast as possible, it sometimes turned out defective.  The pipes would contain holes and/or defects in the casting.  I believe these defects were hidden from the United States Government at the point of sale.

> . . .

> I am aware that McWane officials submitted false reports to the United States Government regarding environmental problems at the Birmingham plant.  In the early 1990's, the EPA investigated the Birmingham plant for improper water discharges.  As a result of this investigation, McWane agreed to implement new water testing plans and procedures.  I have reviewed correspondence from

3

> McWane officials, written under penalty of perjury, stating that new water testing plans and procedures were put into effect at the Birmingham plant.  However, I know for a fact that these plans and procedures were never put into force.  The documents sent to the Federal Government indicating that these plans and procedures were put into effect were false.  Also, I am aware that McWane officials forged my name to certain water discharge testing documents.  Other names were forged to testing documents as well.  These documents indicated that certain testing had been done, when in fact, it had not.  This shows further misrepresentations made to the Government in order to cover up EPA violations at the Birmingham plant.

(Rester Affid. ¶¶ 3-4, 6).

On January 7, 2003, Rester disclosed all of McWane's alleged fraudulent activities and statutory violations to the Environmental Protective Agency and the Department of Justice. (Amd. Cmpt. ¶ 27).

Rester filed this qui tam action on behalf of himself and the United States under the False Claims Act, 31 U.S.C. § 3729, on March 14, 2003.  On December 1, 2004, Rester filed an amended complaint containing three counts.[3]

---

[3] Rester's Amended Complaint is entitled "Amended Qui Tam Complaint" and states:

> This action is brought on behalf of the United States to recover all damages, penalties and other remedies established by and pursuant to 31 U.S.C.A. §§ 3729-3733, and Relator Robert Rester claims entitlement to a portion of any recovery obtained by the United States as qui tam plaintiff authorized by 31 U.S.C.A. §3730.

(Amd. Cmpt. ¶ 8).  The Amended Complaint also asserts, "Relator also seeks recovery against Defendant under ancillary state claims for wrongful termination of employment."  (*Id.* at ¶ 2).

Count One of the Amended Complaint claims defendant violated the "False Claims Act, 31 U.S.C.A. § 3729(7)."  (Amd. Cmpt. ¶¶ 35-39).  This count states:

> Upon information and belief, Defendant caused to be made false records or statements to conceal or avoid an obligation to pay or transmit money to the Government with knowledge of their falsity, or with grossly negligent or reckless disregard to facts and conditions that would indicate that said claims were

inaccurate or inappropriate and false.

Defendants violated the False Claims Act in order to conceal violations of both the Occupational Safety and Health Act, 29 U.S.C.A. §§ 664-665 and the Comprehensive Environmental Response, Compensation and Liability Act, 42 U.S.C.A. § 9602.

The Defendant, in performing the aforementioned acts, conspired to defraud the United States Government in violation of 31 U.S.C.A. § 3729(7).

By reason of the violation of 31 U.S.C.A. § 3729(7), Defendant has knowingly or recklessly damaged the United States Government in an amount yet to be determined.

(*Id.* ¶¶ 36-39). Count Two alleges that plaintiff communicated defendants illegal activities to the media and was terminated in violation of the "False Claims Act Whistleblower Protection Provision 31 U.S.C.A. § 3730 (h)." (*Id.* ¶¶ 40-44). Count Two states:

After commencing his employment with Defendant, the Relator obtained personal knowledge that Defendant was engaged in various fraudulent activities including environmental and occupational safety statutory violations.

On or about July of 2002, Relator, with knowledge that it was a violation of federal law to knowingly or willfully make or cause to be made any false statement, representation of material fact or statutory violation, verbally informed the media that Defendant was engaged in such activities.

At all times material hereto, Defendant knew or was grossly negligent or reckless in not knowing that illegal activities and statutory violations were occurring.

On or about September 19, 2002, and following Relator's discussions with media affiliates regarding Defendant's illegal activities, Relator received written notice via letter from Defendant that his employment was being immediately terminated for alleged failure to comply with the company doctor's advice.

Said termination for the reason set forth in the September 19, 2002, correspondence was pretextual in that the true reason for the Relator's termination was that Defendant was aware that the Relator knew of the Defendant's various illegal and fraudulent activities and reported same to the media.

Defendant has, pursuant to the termination, knowingly withheld and refused to pay Relator severance pay. Relator lost his retirement benefits and health

5

## RULE 12(b)(6) STANDARD

Rule 12(b)(6) tests the legal sufficiency of a complaint.  When considering a Rule 12(b)(6) motion, the court assumes that all factual allegations pled in the complaint are true. *United States v. Gaubert*, 499 U.S. 315, 327, 111 S. Ct. 1267, 113 L. Ed. 2d 335 (1991).  All factual allegations are to be construed in the light most favorable to the plaintiff.  *Brower v. County of Inyo*, 489 U.S. 593, 598, 109 S. Ct. 1378, 103 L. Ed. 2d 628 (1989).  Dismissal under Rule 12(b)(6) is appropriate "'only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations' of the complaint."  *Rendon v. Valleycrest Prods., Ltd.*, 294 F.3d 1279, 1282 (11th Cir. 2002) (citing *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984)).

---

> insurance as a result of the wrongful termination.
>
> The Defendant's termination of the Relator's employment arose after and in violation of 31 U.S.C.A. § 3730(h) as a knowing and direct result of Relator's reporting Defendant's illegal and fraudulent activities to the media.

(*Id.* ¶¶ 37-43).  Count Three asserts a claim for "Wrongful Termination of Employment."  (*Id.* at ¶¶ 45-48).  This count asserts:

> On or about September 19, 2002, Relator was discharged from his employment as a result of his refusal to violate federal and state law.
>
> As a direct and proximate result of his unlawful and discriminatory discharge, Relator has suffered serious economic hardship, including lost wages and special damages associated with his loss of health care coverage and efforts to obtain alternative employment, in an amount to be proved at trial.
>
> That Relator request all relief necessary to make him whole including, but not limited to, two times his back pay and other compensatory damages sustained by reason of Defendant's discrimination and retaliation.

(*Id.* ¶¶ 46-48).

# ARGUMENTS[4]

## I.  Defendant's Motion.

### A.  The Court Should Dismiss the Complaint Because It Fails to State a Claim Upon Which Relief Can Be Granted.

Defendant notes that Count I of the Amended Complaint asserts that its actions violated § 3729(a)(7) of the False Claims Act ("FCA") because "Defendant caused to be made false records or statements to conceal or avoid an obligation to pay or transmit money to the Government . . ." (Amd. Cmpt. ¶ 36).  It is defendant's position that Count I must be dismissed because it fails to allege that McWane has falsely sought to avoid any fine or penalty that has actually been imposed by the Government.  At the very most, defendant argues, the Amended Complaint alleges that McWane *could* have been fined under federal and state law.

According to McWane, a defendant is liable under the FCA if he "knowingly makes, uses, or causes to be made or used, a false record or statement to conceal, avoid, or decrease an obligation to pay or transmit money or property to the Government."  31 U.S.C.A. § 3729(a)(7).  Defendant notes that the type of false claim covered by  § 3729(a)(7) is known as a "reverse false claim" because it involves a falsification made to avoid paying money to the Government, in contrast to false claims that are made to obtain money from the Government.  *See United States v. Q Intern. Courier, Inc.,* 131 F.3d 770, 772 (8th Cir. 1997) (discussing example of reverse false claim).  According to defendant, to prevail in a reverse false claim action, the plaintiff must show that the United States:

was owed a specific, legal obligation at the time that the alleged false record or

---

[4] This section summarizes the arguments made by the parties and does not necessarily reflect the conclusions reached by the court.

> statement was made, used, or caused to be made or used. The obligation cannot be
> merely a potential liability: instead, in order to be subject to the penalties of the False
> Claims Act, a defendant must have had a present duty to pay money or property that
> was created by a statute, regulation, contract, judgment, or acknowledgment of
> indebtedness. The duty, in other words, must have been an obligation in the nature
> of those that gave rise to actions of debt at common law for money or things owed.

*Q International Courier*, 131 F.3d at 773.  Defendant asserts that the Eleventh Circuit cited the *Q*

*International Courier* holding with approval in *United States v. Pemco Aeroplex, Inc.*, 195 F.3d

1234, 1237 (11th Cir. 1999).  Given this case law, defendant concludes that a reverse false claim

under the FCA cannot be based on a contingent obligation to pay fines to the Government.

Defendant points to *American Textile Manufacturers Institute, Inc. v. The Limited, Inc.,* 190

F.3d 729 (6th Cir. 1999), for an illustration.  In *American Textile Manufacturers*, the plaintiff alleged

that several apparel companies transshipped products produced in China and mislabeled the country

of origin as Hong Kong or Macau to avoid textile quotas.  190 F.3d at 731.  The plaintiff contended

that the companies made false statements to prevent the Government from discovering these illegal

shipping activities in order to avoid having to pay fines, damages, or duties to the Government.  *Id.*

at 734.  The plaintiff further maintained that the false statements rendered the companies liable for

reverse false claims because they enabled the companies to avoid the "obligation" to pay the

Government.  *Id.*  The Sixth Circuit affirmed the district court's dismissal of the complaint, holding

that:

> Contingent obligations--those that will arise only after the exercise of discretion by
> government actors--are not contemplated by the statute. Examples of contingent
> obligations include those arising from civil and criminal penalties that impose
> monetary fines after a finding of wrongdoing . . . contingent obligations . . . attach
> only after the exercise of administrative or prosecutorial discretion, and often after
> a selection from a range of penalties.

*Id.* at 738.  Because the apparel companies had no contract with the Government and the

Government had no judgment against them, any obligation they had would have fallen into the category of a contingent obligation.  *Id.* at 738-39.

Defendant argues that application of the reverse claim provision to future, undetermined or contingent obligations would require district courts to determine " whether the government would have exercised its discretion not to pursue relief, . . . whether the government would have sought relief satisfying the False Claims Act's linguistic trigger of 'money or property,'" and the amount of the financial penalty that the government would have exacted, taking into consideration retribution, deterrence, and restitution.  *Id.* at 740.  For example, defendant notes, federal oversight agencies such as the EPA may, "in the exercise of prosecutorial discretion, decide not to seek a fine in a particular case for any number of reasons (first offense, excusable neglect, lack of knowledge,  misleading government advice, and so forth)."  John T. Boese,[5] *Civil False Claims and Qui Tam Actions* 2-45 (2004 Supp.) [hereinafter, Boese].  In other words, defendant argues, broadening the interpretation of § 3729(a)(7) to include contingent obligations "would have the potential to significantly expand False Claims Act jurisdiction into areas *not* involving the expenditure of federal funds."  *Id.* at 2-42.


Defendant notes that the Amended Complaint alleges that McWane is liable under § 3729(a)(7) because, had its reports and other communications to the Government not been false, "McWane *could* have been fined under both federal and state law."  (Amd. Cmpt. ¶ 30) (emphasis added).  Defendant denies that it falsified reports or other documents to the Federal or State Government.  However, defendant argues, even if it had done so, the Amended Complaint contains

---

[5] Defendant asserts that John Boese has been recognized as the "leading commentator" on the FCA by the Eleventh Circuit.  *U.S. ex rel. Clausen v. Laboratory Corp. of America, Inc.,* 290 F.3d 1301, 1310 n.16 (11th Cir. 2002).

no allegation that the Government has found McWane in violation of any statute or regulation and ordered the company to pay a fine or other monetary assessment.  Defendant maintains that, on the face of the Amended Complaint, plaintiff acknowledges that McWane has no financial obligation to the Government.  Instead, defendant asserts, plaintiff merely speculates that, under different circumstances, McWane could have had a financial obligation to the Government in the form of a fine.  Accordingly, defendant concludes, Count I of the Amended Complaint fails to state a claim upon which relief can be granted, and it must be dismissed.

Likewise, defendant argues, Counts II and III must also be dismissed for failure to state a claim upon which relief can be granted.  Defendant notes that, in these counts, plaintiff alleges that McWane violated the whistleblower provision of the FCA (§ 3730(h)) when the company terminated plaintiff, allegedly in retaliation for his reporting the company's illegal and fraudulent activities to the media.  For a plaintiff to obtain relief under § 3730(h), defendant contends, the plaintiff must prove that he or she engaged in protected conduct and the defendant retaliated against the individual because of that protected conduct.  *Mann v. Olsten Certified Healthcare Corp.*, 49 F.Supp.2d 1307, 1313 (M.D. Ala. 1999).  Additionally, defendant asserts, the plaintiff's conduct must be "in furtherance" of an "action" under the FCA.  *Id.*  Defendant maintains that courts have broadly interpreted this requirement to provide protection to plaintiffs as long as FCA litigation was a "distinct possibility" when the plaintiff acted.  *Id.  See also Childree v. UAP/GA CHEM, Inc.,* 92 F.3d 1140, 1146 (11th Cir. 1996) (adopting the "distinct possibility" test).  According to defendant, courts also require "that there at least be a distinct possibility that a *viable* FCA action could be filed."  *Dookeran v. Mercy Hospital of Pittsburgh,* 281 F.3d 105, 108 (3rd Cir. 2002) (emphasis added) (citing *Hutchins v. Wilentz, Goldman & Spitzer,* 253 F.3d 176, 188 (3rd Cir. 2001)).  *See also*

*McKenzie v. BellSouth Telecommunications, Inc.,* 219 F.3d 508, 515-16 (6th Cir. 2000); *Eberhardt v. Integrated Design & Const., Inc.,* 167 F.3d 861, 867 (4th Cir. 1999); *Childree,* 92 F.3d at 1146; Boese at 4-211.  In other words, defendant argues, there must be a reasonable basis for the underlying fraud claim because the whistleblower provisions of the FCA only protects actions which relate to "an action filed or *to be filed* under this section."  31 U.S.C.A. § 3730(h) (emphasis added).  Moreover, defendant states, this

> "to be filed" [language] limits coverage to situations in which litigation could be filed legitimately--that is, consistently with Fed.R.Civ.P. 11. Then an employee who fabricates a tale of fraud to extract concessions from the employer, or who just imagines fraud but lacks proof, legitimately may be sacked. No action is "to be filed" in either case, and employees who use reports of fraud to better their own position, or who behave like Chicken Little, impose costs on employers without advancing any of the goals of the False Claims Act.

*Neal v. Honeywell Inc.,* 33 F.3d 860, 864 (7th Cir. 1994).

It is defendant's position that, because the FCA protects plaintiffs only in situations in which litigation under the FCA could be filed legitimately, Counts II and III of plaintiff's Amended Complaint have no reasonable basis in law and must be dismissed because plaintiff does not have a viable reverse false claim under § 3729(a)(7) of the FCA.  Ultimately, defendant contends, because plaintiff cannot be afforded any protection under the FCA's whistleblower provision and because he has no legal claim under the FCA, plaintiff's entire Amended Complaint must be dismissed for failure to state a claim upon which relief can be granted.

> **B.     The Court Should Dismiss the Complaint Because It Fails to Plead Fraud with Particularity.**

Defendant argues that the Amended Complaint must also be dismissed because it does not allege specifics regarding the fraud on which the false claims action is based.  "In all averments of

fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity."

Fed. R. Civ. P. 9(b).  Defendant notes that the Eleventh Circuit treats FCA claims no differently than

other fraud claims, agreeing with its "sister circuits and a number of district courts in this circuit that

have applied Rule 9(b) to False Claims Act actions."  *U.S. ex rel. Clausen v. Laboratory Corp. of

America, Inc.,* 290 F.3d 1301, 1309 (11th Cir. 2002).  Defendant highlights the following quote from

*United States ex rel. Atkins v. McInteer,* 2004 WL 2651341 (N.D. Ala. 2004):

> General averments [in FCA claims] do not suffice, no matter how difficult it may be
> for a relator to meet the stringent requirement of particularity without first obtaining
> court aided access to discovery materials from defendant. . . . The federal courts are
> increasingly reluctant to allow fishing expeditions by whistle-blowers employing the
> FCA and hoping for federal intervention. The whistle must be blown not only loudly,
> but with Rule 9(b) particularity in the complaint before the courts will listen.

2004 WL 2651341 *2.  Defendant asserts that, applying Rule 9(b) to allegations under the FCA, the

Eleventh Circuit has further stated that a plaintiff "must plead facts as to time, place, and substance

of the defendant's alleged fraud, specifically the details of the defendants' allegedly fraudulent acts,

when they occurred, and who engaged in them."  *Clausen,* 290 F.3d at 1310 (internal quotation

marks and citation omitted).  Defendant asserts that, "[a]t a minimum, Rule 9(b) requires that a

plaintiff set forth the 'who, what, when, where, and how' of the alleged fraud." *United States ex rel.

Thompson v. Columbia/HCA Healthcare Corp.*, 125 F.3d 899, 903 (5th Cir. 1997).

According to defendant, plaintiff's Amended Complaint clearly fails to satisfy the

requirements of Rule 9(b) because it contains no particulars regarding McWane's alleged efforts to

"knowingly, intentionally and willfully [withhold] records and statements to officials of the United

States which would have revealed various statutory violations concerning the safety and welfare of

its employees and [violations of] environmental standards and regulations."  (Amd. Cmpt. ¶ 26).

Defendant contends that the Amended Complaint merely alleges that McWane: "falsified water clarification tests" submitted to EPA and ADEM; hid defects in pipe allegedly sold "to the United States Government through various distributors;" falsely reported to OSHA that safety "violations had been fixed;" "submitted yearly audits" containing "misrepresentations about EPA and OSHA violations;" falsely stated that the company had implemented "new water testing plans and procedures;" and forged plaintiff's name and the names of others on water discharge testing documents. (Amd. Cmpt. ¶¶ 30, 31, 33, and 34). Defendant asserts that none of these allegations identifies the alleged false record, or the time, place, or specific content of the false record. Nor, defendant asserts, does the Amended Complaint identify who allegedly created the false records. Finally, defendant argues, the Amended Complaint never explains how or why the record was false. Defendant concludes that, because plaintiff has failed to comply with the pleading requirements of Rule 9(b), the court should dismiss the Amended Complaint for failure to state a claim upon which relief can be granted. *See Clausen,* 290 F.3d at 1315 (affirming the District Court's dismissal of the complaint for failing to meet the minimum pleading requirements for specificity under Rule 9(b)).

## II.    Plaintiff's Response.

### A.    Courts Have Commonly Allowed "Reverse Claim" Cases to Survive a Motion to Dismiss.

Plaintiff claims that, contrary to defendant's arguments, courts have commonly allowed reverse claim cases to survive a motion to dismiss. Plaintiff notes that a claim under § 3729(a)(7) requires proof that: "(1) the defendant made, used, or caused to be made or used a record or statement to conceal, avoid, or decrease an obligation to the United States; (2) the statement or record was false; (3) the defendant knew that the statements or record was false; and (4) the United

13

States suffered damages as a result." *United States ex rel. Stinson, Lyons, Gerlin & Bustamante, P.A. v. Provident Life & Accident Ins. Co.*, 721 F.Supp. 1247, 1259 (S.D. Fla. 1989). According to plaintiff, the knowledge element is defined in 31 U.S.C. § 3729(b) as follows:

> [T]he terms "knowing" and "knowingly" mean that a person, with respect to information--(1) has actual knowledge of the information; (2) acts in deliberate ignorance of the truth or falsity of the information; or (3) acts in reckless disregard of the truth or falsity of the information.

31 U.S.C. § 3729(b). The statute states that no proof of specific intent to defraud is required. *Id.* Plaintiff asserts that mere negligence or innocent mistake is insufficient to satisfy the knowledge requirement. *United States ex rel. Hagood v. Sonoma County Water Agency,* 929 F.2d 1416, 1421 (9th Cir. 1991). "Rather, defendant must act at least with 'deliberate ignorance' or 'reckless disregard' of the truth or falsity of the information." *Wilkins ex rel. United States v. State of Ohio,* 885 F.Supp. 1055, 1059 (S.D. Ohio 1995). Plaintiff notes that the *Wilkins* court analyzed § 3729(b) as follows:

> Although plaintiff must prove that the defendant acted with knowledge as that term is defined in § 3729(b), plaintiff is not required to prove that the defendant acted with the intent to deceive. The gist of the violation is not an intent to deceive but the knowing presentation of a claim, record or statement that is either "fraudulent" or "false" and the requisite intent is the knowing presentation of what is "known to be false" or "a lie." Thus, the scienter requirement is something less than the elements of fraud at common law.

885 F.Supp. at 1059-60 (internal citations omitted).

Interestingly, plaintiff asserts, the *Wilkins* court also held that even though the amended complaint did not meet the requirements of Rule 9(b), the defendant was not entitled to complete dismissal. 885 F.Supp. at 1060-67. Plaintiff points to the following passage from *Wilkins*:

> The amended complaint does not comply with the particularity requirements of Rule 9(b). Nonetheless, plaintiff argues that he should not be held to the requirements of

14

Rule 9(b) because the information he needs to provide specific information is within the control of the defendants. . . . An exception to Rule 9(b)'s particularity requirement exists where the relevant facts lie exclusively within the knowledge and control of the opposing party.  In such a case, pleading upon information and belief is permissible, but plaintiff must still plead a statement of facts upon which his belief is based.

The court concludes that this is an appropriate case in which to apply the exception to Rule 9(b). Defendants do not contend that plaintiff has equal access to the documents he seeks, and in fact have filed a motion for a protective order to prevent discovery while their motion to dismiss is pending. Rather, they argue that plaintiff should be expected to allege the relevant facts based on memory.

*Id.* at 1061 (internal citations omitted).

Plaintiff also points to *United States ex rel. Sequoia Orange Co. v. Oxnard Lemon Co.,* 1992 WL 795477 (E.D. Cal. 1992), where the court examined the validity of reverse false claims under the legislative history of the FCA.  Plaintiff highlights the following quote:

The legislature intended that the Act be available to remedy false claims submitted to any agency or instrumentality of the Government. . . .

Section (a)(7) was added to the FCA in 1986 to cover "situations where, by means of false financial statement or accounting reports, a person attempts to defeat or reduce the amount of a claim or potential claim by the United States against him." S.Rep. at p. 18, reprinted in, 6 U.S.C.C.A.N., supra, at p. 5283. The added clarification was to make "... an individual who makes a material misrepresentation to avoid paying money owed the Government ... equally liable under the Act as if he had submitted a false claim." . . .

If plaintiff's allegations are taken as true, as they must be on this motion, the Government had "potential claims" for forfeitures and fines against defendants for the alleged overshipments and violations of the Lemon Marketing Order. Defendants are claimed to have covered up the potential claims by submitting false shipping reports. Had the Government successfully prosecuted defendants for the violations, the United States Treasury would have been enhanced through the payment of the appropriate fines and forfeitures.

1992 WL 795477 *7-8.

Plaintiff argues that the present case is similar to *Oxnard Lemon Co.*  The Amended

15

Complaint here alleges that defendant falsified water testing records to the EPA in violation of federal law.  Plaintiff contends that, had the Government successfully prosecuted defendant for these violations, the United States Treasury would have been enhanced by the payment of the appropriate fines and forfeitures.[6]

Plaintiff further maintains that the case of *United States ex rel Stevens v. McGinnis, Inc.,* 1994 WL 799421 (S.D. Ohio 1994), is analogous to the present action.  In *Stevens*, plaintiff notes, the relator was a former employee of the defendant who filed a false claim case alleging that the defendant discharged pollutants in violation of the Clean Water Act.  1994 WL 799421*1-2.  In denying the defendant's motion for summary judgment, the *Stevens* court looked to § 3729(a)(7) and asserted that it provided a remedy against "an individual who makes a material misrepresentation to avoid paying money owed the Government," and that such an individual is "equally liable under the Act as if he had submitted a false claim."  1994 WL 799421*6.  The *McGinnis* court noted that the United States Supreme Court had reviewed the legislative history of the FCA and concluded that "the Act was intended to reach all types of fraud, without qualification, that might result in financial loss to the Government."  *Id.* (quoting *United States v. Neifert-White Co.*, 390 U.S. 228, 232 (1968)).  Plaintiff notes that the *Stevens* court relied on *Oxnard Lemon Co.* and held that "[a]ny false reports submitted by defendants to the Government with the effect that payment of forfeitures of fines to the Government were avoided, constitute false claims within the meaning of the reverse false claims provision of the Act, 31 U.S.C. § 3729(a)(7)."[7]  *Id.* at *7.

---

[6] Plaintiff notes that defendant is currently being criminally prosecuted in federal court for the violations he alleges in his Amended Complaint.

[7] Plaintiff also asserts that the *Stevens* court indicated that the relator was entitled to more discovery on his claims:

Plaintiff points to *Pickens v. Kanawha River Towing*, 916 F.Supp. 702 (S.D. Ohio 1996), as a final example of a case in which the court denied a motion to dismiss where the plaintiff alleged a reverse qui tam claim.  Plaintiff highlights the following passage from *Pickens*:

> A reverse false claim occurs when a defendant omits information that it is required to provide or maintain in order to avoid a payment obligation to the United States. Pickens alleges that the Defendants failed to report their pollution, or keep transfer records as required by the [Clean Water Act] and its regulations. By failing to maintain these records, the Defendants were able to avoid the payment of fines owed to the United States under the CWA. Such avoidance is a reverse false claim.

916 F.Supp. at 705.[8]

**B.    Plaintiff's Complaint Meets the Requirements of Rule 9(b) of the Federal Rules of Civil Procedure.**

Plaintiff asserts that "[t]he 'reverse false claim' provision of the False Claims Act, 31 U.S.C.

---

> Discovery in this case was limited by the Court and parties. Relator's have not had a fair opportunity to establish whether McGinnis violated 32 U.S.C. § 3729(a)(7). In spite of this, however, the Court finds there is a genuine issue of material fact, whether McGinnis submitted to the Government misrepresentations denying pollution to avoid paying the Government fines, penalties and costs of clean-up.

1994 WL 799421*8.

[8] The court notes that the Sixth Circuit declined to follow *Stevens* and *Pickens* in *American Textile Mfrs. Institute, Inc. v. The Limited, Inc.,* 190 F.3d 729, 735 (6th Cir. 1999). The Sixth Circuit stated in *American Textile Manufacturers*:

> To recover under the False Claims Act, we believe that the United States must demonstrate that it was owed a specific, legal obligation at the time that the alleged false record or statement was made, used, or caused to be made or used. The obligation cannot be merely a potential liability: instead, in order to be subject to the penalties of the False Claims Act, a defendant must have had a present duty to pay money or property that was created by a statute, regulation, contract, judgment, or acknowledgment of indebtedness. The duty, in other words, must have been an obligation in the nature of those that gave rise to actions of debt at common law for money or things owed.

190 F.3d at 735.

17

§ 3729(a)(7), allows the government to recover a civil penalty from any person who 'knowingly makes, uses, or causes to be made or used, a false record or statement to conceal, avoid, or decrease an obligation to pay or transmit money or property to the Government.'" *U.S. v. Pemco Aeroplex, Inc.,* 195 F.3d 1234, 1236 (11th Cir. 1999).  Plaintiff acknowledges that Federal Rule of Civil Procedure 9(b) states that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity."  The Eleventh Circuit, plaintiff notes, has stated that, under Rule 9(b), a plaintiff must plead "facts as to time, place, and substance of the defendant's alleged fraud," specifically, "the details of the defendants allegedly fraudulent acts, when they occurred, and who engaged in them." *Cooper v. Blue Cross and Blue Shield of Florida, Inc.,* 19 F.3d 562, 567-68 (11th Cir. 1994).

Plaintiff asserts that he has met his burden under Rule 9(b).  According to plaintiff, his Amended Complaint and affidavit allege the "who, what, when, where and how" of defendant's fraudulent conduct.  Plaintiff draws the court's attention to the following passage from *United States ex rel. Clausen v. Laboratory Corp. of America, Inc.,* 290 F.3d 1301 (11th Cir. 2002):

> When Rule 9(b) applies to a complaint, a plaintiff is not expected to actually prove his allegations, and we defer to the properly pleaded allegations of the complaint. But we cannot be left wondering whether a plaintiff has offered mere conjecture or a specifically pleaded allegation on an essential element of the lawsuit.

290 F.3d at 1313.  In this case, plaintiff argues, neither defendant or the court are "left wondering" as to the nature of the allegations in the Amended Complaint.  Plaintiff contends that the Amended Complaint clearly set forth a time period where defendant's officials falsified water testing reports to the EPA.  Furthermore, plaintiff maintains, the Amended Complaint details the fraudulent scheme by defendant regarding its testing procedures.  Here, plaintiff asserts, defendant has been alerted to

18

the "precise misconduct with which they are charged." *Clausen*, 290 F.3d at 1310.

Further, plaintiff contends that his allegation that defendant sold defective pipe to the Government meets the requirements for liability under 31 U.S.C. § 3729(a)(1). Section 3729(a)(1) prohibits "knowingly present[ing], or caus[ing] to be presented, to an officer or employee of the United States Government or a member of the Armed Forces of the United States[,] a false or fraudulent claim for payment or approval." 31 U.S.C. § 3729(a)(1). Plaintiff claims that the requirements for liability under this section are: (1) that the defendant knowingly presents or causes to be presented to an officer or employee of the Government a false or fraudulent claim for payment or approval; (2) that the claim was false or fraudulent; (3) the defendant knew the claim was false or fraudulent; and (4) that the United States suffered damages as a result of the false or fraudulent claim.[9]

## C.    Authority Relied Upon by the Defendant Allows for the Filing of Another Amended Complaint and Discovery.

Plaintiff argues that some of the cases relied upon by defendant indicate that this court should allow further discovery and another amended complaint before finally ruling on the Motion to Dismiss. Plaintiff notes that in *United States ex rel. Clausen v. Laboratory Corp. of America, Inc.,* 290 F.3d 1301 (11th Cir. 2002), the district court found that, while Rule 9(b) did apply, the plaintiff "could amend his complaint and attempt to come into compliance with the rule." 290 F.3d at 1305. In *Clausen*, the Eleventh Circuit discussed its previous ruling in *Cooper v. Blue Cross and Blue Shield of Florida, Inc.,* 19 F.3d 562 (11th Cir. 1994). Plaintiff highlights the following passage:

> In the context of discussing limitations on the ability of plaintiffs to bring False Claims Act suits when certain information has been publicly disclosed, we observed

---

[9] Plaintiff does not cite to any authority for these requirements.

> that Rule 9(b) prevents "[s]peculative suits against innocent actors for fraud," and explained that under Rule 9(b) allegations of fraud "must include facts as to time, place, and substance of the defendant's alleged fraud." *Id.* at 566-67 (citing *Durham v. Bus. Mgmt. Assocs.*, 847 F.2d 1505, 1511 (11th Cir.1988)). . . . Despite [holding that Cooper did not satisfy Rule 9(b)], we remanded the case because the plaintiff was entitled to "one chance to amend the complaint and bring it into compliance with the rule." *Id.* at 568-69.

*Clausen*, 290 F.3d at 1308.

Plaintiff further notes that defendant relies on *United States ex rel. American Textile Manufacturers Institute, Inc. v. The Limited*, 179 F.R.D. 541 (S.D. Ohio 1997). Plaintiff asserts that the procedural context in *American Textile Manufacturers* was different from that in this case. In *American Textile Manufacturers*, plaintiff notes, the relator did not attempt to amend the complaint until after the motion to dismiss had been ruled upon. 179 F.R.D. at 543. Plaintiff asserts that in *American Textile Manufacturers*, the court noted that Federal Rule of Civil Procedure 15(a) provides that leave to amend "shall be freely given when justice so requires." *Id.* at 550. The *American Textile Manufacturers* court further indicated that it might have allowed the amendment had it been filed prior to the judgment. *Id.* at 551.

Finally, plaintiff points to *United States ex rel. Young v. Gateway 2000, Inc.*, 1999 U.S. Dist. LEXIS 11637 (D.C. Dist. 1999). Plaintiff notes that, in *Young*, the court held that a relator had alleged misconduct with sufficient particularity such that it would be premature to grant the defendant's motions before the completion of discovery. 1999 U.S. Dist. LEXIS 11637*11. Plaintiff maintains that, as in this case, the defendant in *Young* argued that, as a matter of law, the relator could not prove that defendant owed a present obligation to pay damages. *Id.* at 10. In response, the court stated as follows:

> This argument is not persuasive. First, relator has stated a claim that defendant

knowingly made false statements "to conceal, avoid, or decrease an obligation to pay or transmit money or property to the Government . . . ." 31 U.S.C. § 3729(a)(7). See Am. Compl. PP 23-24. Second, while case law from other circuits appears to require a present obligation in order to give rise to liquidated damages, see, e.g., *United States v. Pemco Aeroplex, Inc.*, 166 F.3d 1311, 1314 (11th Cir. 1999), *United States v. Q International Courier, Inc.*, 131 F.3d 770, 773 (8th Cir. 1997), relator has not had an opportunity to conduct discovery to support the required showing. Relator seeks, for example, to determine the extent, if any, of defendant's contractual obligations to comply with its subcontracting plan; she also seeks to ascertain whether the government had commenced an investigation into defendant's compliance with its subcontracting plan. Pending completion of discovery, defendant's motion with respect to this issue will be denied without prejudice to renewal as a motion for summary judgment.

*Id*. at 10-11.

**D.    The Criminal Indictment Indicates that Rester Can State a Viable Cause of Action for a Reverse Claim.**

Plaintiff addresses defendant's assertion that the Amended Complaint contains no allegation that the Government has found defendant in violation of any statute or imposed a fine upon defendant.  Plaintiff points out that defendant has been indicted for the conduct complained of by plaintiff in this case.[10]

**E.    The Complaint States a Claim for which Relief Can Be Granted Pursuant to 31 U.S.C. § 3730(h).**

Plaintiff notes that 31 U.S.C. § 3730(h) states:

Any employee who is discharged, demoted, suspended, threatened, harassed, or in any other manner discriminated against in the terms and conditions of employment by his or her employer because of lawful acts done by the employee on behalf of the employee or others in furtherance of an action under this section, including investigation for, initiation of, testimony for, or assistance in an action filed or to be filed under this section, shall be entitled to all relief necessary to make the employee whole.

---

[10] Plaintiff has attached a copy of the relevant indictment to his response and asks that the court take judicial notice of it.

21

Plaintiff argues that, in order to prove a violation of § 3730(h), a relator must prove: "(1) he engaged in protected activity, that is, 'acts done ... in furtherance of an action under this section'; and (2) he was discriminated against 'because of' that activity."  *United States ex rel. Yesudian v. Howard University,* 153 F.3d 731, 736 (D.C. Cir. 1998).  To prove discrimination, plaintiff asserts, a relator must show: "(a) 'the employer had knowledge the employee was engaged in protected activity'; and (b) 'the retaliation was motivated, at least in part, by the employee's engaging in [that] protected activity.'" *Id.*

Plaintiff maintains that his Amended Complaint and affidavit show that he learned that defendant condoned the alleged violations and that plaintiff feared for his job and his safety.  Plaintiff claims that  he spoke to various media persons about McWane's illegal activity and he was subsequently terminated.  Therefore, plaintiff argues, he has stated a claim for which relief can be granted under § 3730(h).

Plaintiff maintains that *Mann v. Olsten Certified Healthcare Corp.*, 49 F.Supp.2d 1307 (M.D. Ala. 1999) indicates that, should the court grant defendant's motion regarding the § 3730(h) claim, such a dismissal should be without prejudice.  Plaintiff points to the following passages from *Mann*:

> Because the court will grant summary judgment as to Mann's sole federal claim, the court declines to exercise supplemental jurisdiction as to her state-law claims and accordingly will dismiss these claims pursuant to 28 U.S.C.A. § 1367(c)(3), albeit without prejudice to refiling the claims in state court.

49 F.Supp.2d at 1322.

> Under this approach, the court will look for evidence that the plaintiff, either by words or actions, communicated to the employer that she believed that the employer had engaged in illegal or fraudulent conduct involving submission of claims for payment to the government. Such a showing could be made, for example, by evidence that the plaintiff characterized the employer's conduct as illegal or fraudulent or recommended that legal counsel become involved. Accordingly,

contrary to the arguments of the defendants, whether the plaintiff's actions fit within such neat categories as "advocating for regulatory compliance," or "regular job responsibilities" will not be dispositive. Instead, the determinative issue simply will be whether the employer could have, based upon a reasonable interpretation of the employee's conduct, feared that the employee was contemplating taking legal action under the FCA or reporting fraud to the government

. . .

Generally speaking, when an employee informs her employer about the discovery of suspected fraud and the employer takes no action to correct it, the employer has reason to fear that the employee will file a qui-tam action or report suspected fraud to the government, unless the employee by words or actions affirmatively indicates otherwise.

*Id.* at 1314-15 (internal citations omitted).

### III.   <u>Defendant's Reply.</u>

#### A.   **Plaintiff's Reverse False Claims Are Based on Contingent Obligations to the Government and Therefore Fail to State a Claim Upon Which Relief Can Be Granted.**

Defendant reasserts its argument that the overwhelming weight of authority holds that reverse false claims under § 3729(a)(7) of the FCA are due to be dismissed if they are based on contingent obligations. Defendant again cites to *United States v. Q Intern. Courier, Inc.,* 131 F.3d 770 (8th Cir. 1997) for the proposition that a reverse false claim under the FCA cannot be based on the possibility that a defendant may have to pay fines to the Government.

Defendant notes that plaintiff cites to three older district court cases in which attempts were made to impose liability where a defendant fails to report various statutory or regulatory violations in order to avoid potential fines. According to defendant, these older cases followed the early, now abandoned, trend in qui tam claims under § 3729(a)(7). Defendant points out that plaintiff cites to two cases arising out of the Southern District of Ohio. According to defendant, these cases are now clearly "discredited" since the Sixth Circuit affirmed the dismissal of a reverse false claim in

*American Textile Manufacturers Institute, Inc. v. The Limited, Inc.,* 190 F.3d 729 (6th Cir. 1999).

Defendant asserts that the court in *American Textile Manufacturers* provided a detailed rationale for

its holding that § 3729(a)(7) does not contemplate false claims based on "contingent obligations that

arise only because the government has prohibited an act, or arising after the exercise of government

discretion." 190 F.3d at 741. *See also* Boese at 2-40 (stating that the early trend imposing liability

on a defendant under §3729(a)(7) violations based on contingent obligations "has clearly changed"

and is "now discredited").

Defendant further argues that the Sixth and Eight Circuit cases rejecting reverse false claims

based on contingent obligations were cited with approval by the Eleventh Circuit in *United States*

*v. Pemco Aeroplex, Inc.*, 195 F.3d 1234 (11th Cir. 1999). In *Pemco*, defendant asserts, the court held

that the United States had a viable reverse false claim under §3729(a)(7) only because the defendant

had a "written contract which expressly obligated Pemco to be responsible and accountable for the

government property in its possession." 195 F.3d at 1238. In other words, defendant contends,

Pemco "had a specific legal obligation" at the time that it allegedly violated the FCA. *Id.* at 1237.

Even accepting as true plaintiff's allegations that McWane falsified reports or other documents to

the Federal or State Government, defendant argues, plaintiff's Amended Complaint contains no

allegations that defendant violated the terms of a written contract with the Government and no

allegations that the Government has found defendant in violation of any statute or regulation that

would obligate it to pay a fine or other monetary assessment.

Defendant contests plaintiff's argument that, given defendant's recent indictment for conduct

allegedly complained of by plaintiff, plaintiff's reverse false claims do not involve contingent

obligations. Even assuming that plaintiff is correct in stating that the indictment is evidence of

24

plaintiff's allegations of fraud by McWane, defendant maintains that an indictment does not give rise

to any immediate financial obligation to the Federal Government.  Furthermore, defendant contends,

even if McWane incurs a financial obligation to the Government in relation to the criminal

indictment at some point in the future, plaintiff "may not state a reverse false claim unless the

pertinent obligation attached *before* the defendant made or used the false record or statement."

*American Textile Manufacturers*, 190 F.3d at 734 (emphasis in original).  Defendant points out that

it was indicted in May 2004, over a year after plaintiff filed his original qui tam complaint, and

nearly two years after plaintiff discontinued his employment with McWane.

**B.      Plaintiff's Amended Complaint Fails to State a Claim with the Particularity Required by Rule 9(b).**

Defendant reasserts its argument that plaintiff has failed to plead his claims with the

particularity required by Federal Rule of Civil Procedure 9(b).  Specifically, defendant asserts:

> Rule 9(b) is satisfied if the complaint sets forth (1) precisely what statements were made in what documents or oral representations or what omissions were made, and (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) same, and (3) the content of such statements and the manner in which they misled the plaintiff, and (4) what the defendants obtained as a consequence of the fraud.

*United States ex rel. Clausen v. Laboratory Corp. of America, Inc.,* 290 F.3d 1301, 1310 (11th Cir.

2002).  Defendant notes that, in *Clausen*, the court upheld the dismissal of the relator's FCA

complaint in an alleged Medicare scheme for "a lack of specific information about the actual

submission of claims to the Government."  *Id.* at 1311.  Defendant asserts that the *Clausen* court

upheld the dismissal despite the fact that the relator provided in his first and second amended

complaints: factual references to actual conversations with specifically named defendant employees;

specific descriptions, including technical codes, that were alleged to have been submitted to the

Government on specifically described forms; testing histories of three specific patients as examples of how the alleged fraud was perpetrated; and additional details and references to forms that were allegedly falsified by the defendant. *Id.* at 1304-06. In addition, defendant points out, the relator in *Clausen* provided with his complaint "dozens of pages of exhibits," including medical tests performed, a roster of employees with alleged knowledge of the fraudulent activities of the defendant, and several other documents presented as potential evidence of the alleged fraud. *Id.* at 1304, 1312. Nevertheless, defendant concludes, the *Clausen* court upheld the dismissal of the complaint for failure to plead in accordance with Rule 9(b) because the relator failed "to allege with any specificity if--or when--any actual improper claims were submitted to the Government." *Id.* at 1312.

According to defendant, despite plaintiff's claims to the contrary, his Amended Complaint and recently filed affidavit come nowhere close to providing the kind of specific allegations referred to in *Clausen*. Defendant asserts that Plaintiff's Amended Complaint wholly fails to meet the particularity requirements of Rule 9(b).[11] Defendant contends that the closest plaintiff's Amended Complaint comes to any specific allegations of fraud is where it states that, sometime between 1999 and 2001, "McWane falsified water clarification tests and submitted same to the Environmental Protection Agency (EPA) and Alabama Department of Environmental Management (ADEM)." (Amd. Cmpt. ¶ 30). This claim, defendant argues, fails the specificity requirement of Rule 9(b) because it fails to identify the particular test or tests at issue, the names of persons who allegedly falsified water clarification tests, specific dates those tests were submitted, which reports were sent

---

[11] Defendant argues that plaintiff's affidavit simply quotes, nearly word for word, specific paragraphs in his Amended Complaint. Defendant maintains that this affidavit adds no more details or facts to the "sparse number" of facts pleaded in the Amended Complaint.

to the Federal Government, in what ways the tests were allegedly falsified, or even where the tests were performed. According to defendant, plaintiff's other claims are pled with even less specificity. For example, defendant notes, plaintiff claims that unidentified false documents were sent to the Federal Government indicating that water testing plans and procedures were in effect when in fact they were not. (Amd. Cmpt. ¶ 34). Further, plaintiff asserts that unnamed McWane officials forged his name to "certain water discharge testing documents." (*Id.*) Plaintiff also claims that defendant sold defective pipes to the Federal Government and concealed the defects at the point of sale. (*Id.* at ¶ 31). Defendant argues that these allegations could not be more generalized. As to plaintiff's allegations that McWane sold defective pipe to the Government, defendant maintains that the court is "left wondering whether a plaintiff has offered mere conjecture or a specifically pleaded allegation," because plaintiff has not provided, among other things, specific dates pipe was sold to the Government, the nature of the alleged defects, the location or project to which the pipe was supplied, how he knows that the pipe was defective, how he knows the defective pipe was actually sold to the Government, which Government agency received the defective pipe, or how defects were hidden from the Government. *Clausen*, 290 F.3d at 1313.[12]

Defendant addresses plaintiff's suggestion that he should not be held to the requirements of Rule 9(b) because the information he needs is within the control of McWane. Defendant argues that the very purpose of Rule 9(b) is to enable a defendant such as itself to comprehend a plaintiff's fraud claim under the FCA sufficiently to respond and defend itself. Defendant contends that a complaint,

---

[12] Defendant notes that plaintiff's Amended Complaint states that plaintiff "believes these defects were hidden from the United States Government at the point of sale." (Amd. Cmpt. ¶ 31). According to defendant, plaintiff's lack of specificity makes responding to his "belief" virtually, if not totally, impossible.

even in cases where the court relaxes the requirements of Rule 9(b), "must still adduce specific facts supporting a strong inference of fraud or it will not satisfy even a relaxed pleading standard and it must also allege that the necessary information lies within the defendant's control, and then allegations must be accompanied by a statement of facts upon which allegations are based." *United States ex rel. Sanders v. East Alabama Healthcare Authority,* 953 F.Supp. 1404, 1413 (M.D. Ala. 1996) (internal citations and punctuation omitted).  Critically, defendant argues, plaintiff has not alleged that certain documents supporting his allegations are within McWane's control.  Nor, defendant contends, has he provided enough detail for McWane to locate whatever "information" is purportedly within its control.  Presuming such information exists, defendant asserts, response is impossible absent dates, descriptions of the nature or type of documents allegedly forged, or descriptions of the type of tests referenced or their purposes.

Moreover, defendant maintains, the Eleventh Circuit made it clear in *Clausen* that where a plaintiff "is not without avenues for obtaining information" relating to the alleged fraud, the court will not apply "a more lenient pleading standard because evidence of fraud was uniquely held by the defendant." *Clausen*, 290 F.3d at 1314 n.25.  Defendant asserts that, in both this case and *Clausen*, the alleged fraudulent documents are in the possession of the Government and are publically available through a Freedom of Information Act request or other informal request.  In this case, defendant states, plaintiff had since March 2003 to obtain the alleged fraudulent documents directly from the Government.  Yet, defendant concludes, plaintiff has failed to obtain a single document or even identify in his Amended Complaint any specific documents that provide the basis for his FCA complaint.

   **C.**     **Plaintiff's Claims for Relief Under 31 U.S.C. 3730(h) Should Be Denied For**

**Failure to State a Claim Upon Which Relief Can Be Granted.**

Defendant reasserts its argument that, because the FCA protects relators only in situations in which litigation under the FCA could be filed legitimately, plaintiff's whistleblower claims under § 3730(h) have no reasonable basis in law and must be dismissed because plaintiff does not have a viable reverse false claim under § 3729(a)(7).  Defendant notes that plaintiff also seems to suggest that the dismissal of his claims under § 3730(h) should be without prejudice because the court should decline to exercise supplemental jurisdiction as to his state law claim for wrongful termination.  However, defendant argues, Count III of plaintiff's Amended Complaint contains no state law claims for wrongful termination.  Indeed, defendant asserts, the factual allegations in support of Count III are virtually identical to those in Count II, and plaintiff's prayer for damages at the end of Count II cites the FCA, not state law.

**CONCLUSIONS OF THE COURT**

The plaintiff having not cited any circuit court cases, certainly not any controlling cases, this court concludes that the purported claims based upon potential fines and/or penalties are not maintainable.  Those claims will be dismissed.

Further, pursuant to a recorded discussion of January 24, 2005, the court will give the plaintiff 15 days to file an amended complaint, if he deems it appropriate to do so, setting out with particularity any purported claims based on purported sale(s) and concealment(s) of defective product(s).  Any such claims should, at a minimum, allege:

(1)      The specific customer(s);

(2)      The product(s) involved;

(3)      The facility or facilities at which such product(s) were manufactured;

(4)     The nature of the defect(s);

(5)     The time frame(s) of the alleged sales;

(6)     The basis and source of plaintiff's allegations and his knowledge related thereto; and

(7)     Other information related to said alleged sales of defective products and the relationship of any federal agency thereto.

Further, as to any alleged retaliation claim, the plaintiff will allege at a minimum:

(1)     The names of the person(s) to whom said report(s) alleged to have resulted in retaliation were made and the date(s) of said report(s);

(2)     The nature and content of the report(s); and

(3)     Other pertinent information related to the retaliation claim.


This 26th of January, 2005.


**ROBERT B. PROPST**
**SENIOR UNITED STATES DISTRICT JUDGE**