## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## EASTERN DIVISION

| | | |
|---|---|---|
| **ROBERT RESTER,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **CIVIL ACTION NO. CV-03-PT-0583-E** |
| | ) | |
| **McWANE, INC.,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM OPINION

This cause comes on to be heard upon Defendant McWane, Inc.'s Motion to Dismiss

Plaintiff's Second Amended Complaint filed on February 22, 2005.

## FACTS AND PROCEDURAL HISTORY[1]

Plaintiff Robert Rester ("Rester") is a United States Citizen and a resident of Alabama.

(2nd Amd. Cmpt. ¶ 3).  Defendant McWane, Inc. ("McWane") is an Alabama corporation with

its principal place of business in Birmingham, Alabama.  (*Id.* ¶ 4).  McWane manufactures and

distributes pipe and valve products.  (*Id.* ¶ 5).  Rester was employed by McWane from October

1978 through September 2002.  (*Id.* ¶ 6).  Initially, Rester was employed as a mill right on or

about October 1, 1978 in McWane's Birmingham, Alabama, M&H Valve plant.  (*Id.* ¶ 10).  He

was promoted to maintenance supervisor on or about February 1, 1979.  (*Id.* ¶ 11).  From 1990

though 1996, Rester worked as plant manager of McWane's Canada Pipe plant in Ontario,

Canada.  (*Id.* ¶¶ 13-14).  In 1996, Rester returned to McWane's Anniston, Alabama Union

---

[1] Many of the background facts are given as they are alleged in the Second Amended Qui
Tam Complaint.

Foundry plant and performed the job of maintenance manager.  (*Id.* ¶ 14).  On or about January 1, 1999, Rester moved to McWane's Birmingham plant, where he was promoted to plant manager.  (*Id.* ¶ 15).  Rester was demoted to maintenance supervisor of the Union Foundry plant on or about February 1, 2001.  (*Id.* ¶ 17).

Rester alleges that, during his employment with McWane, he gained personal knowledge that the company engaged in several violations of federal law.  Rester asserts the following: during the time he worked in the Canada Pipe plant, McWane dumped dirty and untreated water in Lake Ontario (2nd Amd. Cmpt. ¶ 13); when he worked at the Birmingham plant, McWane dumped traverse water in nearby recreational water sources and switched water samples to conceal pollutants in violation of EPA standards (*Id.* ¶ 16); the Union Foundry division spilt oil, paint and diesel fuel onto the grounds of the facility, intentionally dumped traverse water in nearby water sources and engaged in various occupational safety hazards (*Id.* ¶ 19).

The second amended complaint alleges in general terms that, at the direction of corporate management, McWane "committ[ed] false claims and engag[ed] in various fraudulent activities including environmental and occupational safety statutory wrongs in violation of both the Occupational Safety and Health Act, 29 U.S.C.A. §§ 664-665 and the Comprehensive Environmental Response, Compensation and Liability Act, 42 U.S.C.A. § 9602." (2nd Amd. Cmpt. ¶¶ 20-23, 26).[2]  Rester further alleges that: McWane sold defective pipe to the United States Government and concealed the defects (*Id.* ¶ 31); in an effort to speed production,

---

[2] Rester also alleges that, during his employment, his knowledge of defendant's fraudulent and unlawful activities caused him to "fear[] for his job and safety."  (2nd Amd. Cmpt. ¶ 23).  According to the second amended complaint, Rester feared retaliation if he disclosed the company's wrongdoing to the public.  (*Id.*)  Rester was eventually demoted and terminated by the defendant.  (*Id.* ¶ 25).

McWane removed guards and covers from conveyer belts in violation of OSHA regulations (*Id.* ¶ 33); McWane engaged in various other OSHA violations and submitted yearly audits to the Federal Government which contained misrepresentations about EPA and OSHA violations (*Id.* ¶ 34); and McWane falsified various other documents and reports to the Government (*Id.* ¶ 35(first)).[3]

On January 7, 2003, Rester disclosed all of McWane's alleged fraudulent activities and statutory violations to the Environmental Protective Agency and the Department of Justice. (Amd. Cmpt. ¶ 27).

Rester filed this qui tam action on behalf of himself and the United States under the False Claims Act, 31 U.S.C. § 3729, on March 14, 2003.  On December 1, 2004, Rester filed an amended complaint.  Among other things, Rester's first amended complaint alleged that McWane was liable under the False Claims Act for concealing information that, if revealed, would have led government agencies to impose fines or penalties upon the company.[4]  This court dismissed those claims on January 26, 2005 in response to a December 21, 2004 Motion to Dismiss by McWane.[5]  This court's Memorandum Opinion regarding that motion stated as follows:

---

[3] The paragraphs in Rester's second amended complaint were mistakenly misnumbered in that there are two paragraphs numbered 35 and two paragraphs numbered 36.  These paragraphs are herein identified by the sequential order in which they appear in the complaint: "¶ 35(first)," "¶ 35(second)," "¶ 36(first)," and "¶ 36(second)."

[4] The court hereinafter refers to these claims as plaintiff's "reverse false claims."

[5] For more information regarding these dismissed reverse false claims and plaintiff's first amended complaint, see the court's January 26, 2005 Memorandum Opinion and Order in this action.

3

The plaintiff having not cited any circuit court cases, certainly not any controlling cases, this court concludes that the purported claims based upon potential fines and/or penalties are not maintainable. Those claims will be dismissed.

Further, pursuant to a recorded discussion of January 24, 2005, the court will give the plaintiff 15 days to file an amended complaint, if he deems it appropriate to do so, setting out with particularity any purported claims based on purported sale(s) and concealment(s) of defective product(s). Any such claims should, at a minimum, allege:

(1)    The specific customer(s);
(2)    The product(s) involved;
(3)    The facility or facilities at which such product(s) were manufactured;
(4)    The nature of the defect(s);
(5)    The time frame(s) of the alleged sales;
(6)    The basis and source of plaintiff's allegations and his knowledge related thereto; and
(7)    Other information related to said alleged sales of defective products and the relationship of any federal agency thereto.

Further, as to any alleged retaliation claim, the plaintiff will allege at a minimum:

(1)    The names of the person(s) to whom said report(s) alleged to have resulted in retaliation were made and the date(s) of said report(s);
(2)    The nature and content of the report(s); and
(3)    Other pertinent information related to the retaliation claim.

On February 10, 2005, Rester filed a second amended complaint containing three counts.[6]

_____

[6] Rester's second amended complaint is entitled "Second Amended Qui Tam Complaint" and states:

This action is brought on behalf of the United States to recover all damages, penalties and other remedies established by and pursuant to 31 U.S.C.A. §§ 3729-3733, and Relator Robert Rester claims entitlement to a portion of any recovery obtained by the United States as qui tam plaintiff authorized by 31 U.S.C.A. §3730.

(2nd Amd. Cmpt. ¶ 8). The second amended complaint also asserts, "Relator also seeks recovery against Defendant under ancillary state claims for wrongful termination of employment." (*Id.* at ¶ 2).

4

_____

Count One of the second amended complaint claims defendant violated the "False Claims Act, 31 U.S.C.A. § 3729(7)." (2nd Amd. Cmpt. ¶¶ 35(second)-39). This count states:

> Upon information and belief, Defendant caused to be made false records or statements to conceal or avoid an obligation to pay or transmit money to the Government with knowledge of their falsity, or with grossly negligent or reckless disregard to facts and conditions that would indicate that said claims were inaccurate or inappropriate and false.

> Defendants violated the False Claims Act in order to conceal violations of both the Occupational Safety and Health Act, 29 U.S.C.A. §§ 664-665 and the Comprehensive Environmental Response, Compensation and Liability Act, 42 U.S.C.A. § 9602.

> The Defendant, in performing the aforementioned acts, conspired to defraud the United States Government in violation of 31 U.S.C.A. § 3729(7).

> By reason of the violation of 31 U.S.C.A. § 3729(7), Defendant has knowingly or recklessly damaged the United States Government in an amount yet to be determined.

(*Id.* ¶¶ 36(second)-39). Count Two alleges that plaintiff communicated defendants' illegal activities to the media and was terminated in violation of the "False Claims Act Whistleblower Protection Provision 31 U.S.C.A. § 3730 (h)." (*Id.* ¶¶ 40-44). Count Two states:

> After commencing his employment with Defendant, the Relator obtained personal knowledge that Defendant was engaged in various fraudulent activities including environmental and occupational safety statutory violations.

> On or about July of 2002, Relator, with knowledge that it was a violation of federal law to knowingly or willfully make or cause to be made any false statement, representation of material fact or statutory violation, verbally informed the media that Defendant was engaged in such activities.

> At all times material hereto, Defendant knew or was grossly negligent or reckless in not knowing that illegal activities and statutory violations were occurring.

> On or about September 19, 2002, and following Relator's discussions with media affiliates regarding Defendant's illegal activities, Relator received written notice via letter from Defendant that his employment was being immediately terminated for alleged failure to comply with the company doctor's advice.

Although nearly identical to Rester's first amended complaint, his second amended complaint adds the following allegations:

> Furthermost, upon information and belief, and pursuant to this Court's Order of January 26, 2005, Rester alleges as follows: (1) Rester is unaware of the specific names of customers who purchased the defective pipe. However, Rester is aware

---

> Said termination for the reason set forth in the September 19, 2002, correspondence was pretextual in that the true reason for the Relator's termination was that Defendant was aware that the Relator knew of the Defendant's various illegal and fraudulent activities and reported same to the media.

> Defendant has, pursuant to the termination, knowingly withheld and refused to pay Relator severance pay. Relator lost his retirement benefits and health insurance as a result of the wrongful termination.

> The Defendant's termination of the Relator's employment arose after and in violation of 31 U.S.C.A. § 3730(h) as a knowing and direct result of Relator's reporting Defendant's illegal and fraudulent activities to the media.

(*Id.* ¶¶ 37-43). Count Three asserts a claim for "Wrongful Termination of Employment." (*Id.* at ¶¶ 45-48). This count asserts:

> On or about September 19, 2002, Relator was discharged from his employment as a result of his refusal to violate federal and state law.

> As a direct and proximate result of his unlawful and discriminatory discharge, Relator has suffered serious economic hardship, including lost wages and special damages associated with his loss of health care coverage and efforts to obtain alternative employment, in an amount to be proved at trial.

> That Relator request all relief necessary to make him whole including, but not limited to, two times his back pay and other compensatory damages sustained by reason of Defendant's discrimination and retaliation.

(*Id.* ¶¶ 46-48).

Rester's allegations in his second amended complaint, including the three counts, are nearly identical to those in his first amended complaint. To the extent that the second amended complaint alleges that McWane is liable under the False Claims Act for concealing information that, if revealed, would have led government agencies to impose fines or penalties upon the company, those claims have already been dismissed. *See supra.*

6

that the federal government, in one way or another, was the end payor for this defective pipe. Rester knows this because McWane employees were instructed to apply American flags to any and all pipe which was being sold, directly or indirectly, to the federal government. Additionally, Rester alleges that McWane has in its sole possession, documents and records which would list pipe sales which involved the federal government. This information is in McWane's sole discretion and control; (2) The products involved include three inch ductile pipe, four inch ductile pipe, six inch ductile pipe, eight inch ductile pipe, ten inch ductile pipe, twelve inch ductile pipe, fourteen inch ductile pipe, sixteen inch ductile pipe, twenty inch ductile pipe, twenty-four inch ductile pipe, thirty inch ductile pipe and thirty-six inch ductile pipe; (3) These products were manufactured at the Birmingham plant of McWane, McWane Pipe; (4) The nature of the defects include pin holes, trough slash, slag knots and dirty bells, etc. These are industry terms for pipe that has weak spots and perforations which prevent uniform thickness of the pipes. Furthermore, Rester knows that the pipe was not properly tested pursuant to industry standards. The pipe sold to the government was not up to industry standards. Furthermore, the pipe was not properly annealed through the requisite heat treatments. Additionally, the pipe was not properly water tested. The pipe also included heat checks/minor cracking in the cement linings. Rester is aware that McWane spent a great deal of money on liquid steal (*sic*) and paint sticks to prepare and conceal the damaged pipe from the federal government. In fact, Rester believes that McWane has in its possession records which set forth the complaints and problems of this defective pipe. This information is in the sole possession and discretion of McWane; (5) The timeframe of the alleged sales is 1999-2001; (6) The basis and source of the Relator's allegations and his knowledge related thereto comes from what Rester saw first hand while working as plant manager in Birmingham for McWane; (7) Other information related to said alleged sales of defective products includes the knowledge that McWane, in an effort to speed production, made and distributed defective pipe which was ultimately paid for by the federal government.

(2nd Amd. Cmpt. ¶32).

Furthermore, pursuant to this Court's Order of January 26, 2005, upon information and belief, Relator alleges the following with respect to his federal and state law claims for wrongful termination: (1) The names of the persons to whom reports alleged to have been resulted in retaliation were made (*sic*) include Jim Singleton, Mitchell Kidd, Jim Delk and Mike Devin. These people were all McWane employees with supervisory capacity over Rester. The dates of these reports are at various times during the timeframe of 1999-2001; (2) The nature and content of the report is the problems with the pipe as set forth above in paragraph 32. These reports were made verbally to the above-referenced individuals; (3) Other pertinent information related to the retaliation claim

includes Rester's knowledge that written pipe reports and scrap reports were turned in to the above-referenced individuals at McWane, noting the pipe deficiencies and the concealing of these deficiencies to pipe ultimately sold to the federal government.

(*Id.* at ¶ 36(first)).

## RULE 12(b)(6) STANDARD

Rule 12(b)(6) tests the legal sufficiency of a complaint.  When considering a Rule 12(b)(6) motion, the court assumes that all factual allegations pled in the complaint are true. *United States v. Gaubert*, 499 U.S. 315, 327, 111 S. Ct. 1267, 113 L. Ed. 2d 335 (1991).  All factual allegations are to be construed in the light most favorable to the plaintiff.  *Brower v. County of Inyo*, 489 U.S. 593, 598, 109 S. Ct. 1378, 103 L. Ed. 2d 628 (1989).  Dismissal under Rule 12(b)(6) is appropriate "'only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations' of the complaint."  *Rendon v. Valleycrest Prods., Ltd.*, 294 F.3d 1279, 1282 (11th Cir. 2002) (citing *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984)).

## ARGUMENTS[7]

### I.     Defendant's Motion.

Defendant moves to dismiss plaintiff's second amended complaint on the grounds that it continues to fail to plead fraud with particularity pursuant to Federal Rule of Civil Procedure 9(b), and that it fails to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6).

### A.     Rule 9(b) Arguments.

---

[7] This section summarizes the arguments made by the parties and does not necessarily reflect the conclusions reached by the court.

Defendant argues that plaintiff's second amended complaint should be dismissed because it does not comply with this court's January 26, 2005 order, which required plaintiff to plead his complaint with the requisite specificity required by Rule 9(c).  According to defendant, plaintiff's second amended complaint fails to allege specific facts regarding the alleged sale of defective pipe to the federal government.  Rule 9(b), defendant asserts, "serves an important purpose in fraud actions by alerting defendants to the precise misconduct with which they are charged and protecting defendants against spurious charges of immoral and fraudulent behavior."  *Durham v. Business Management Associates*, 847 F.2d 1505, 1511 (11th Cir. 1988) (internal quotation marks and citations omitted).  In other words, defendant argues, one of the primary purposes of applying Rule 9(b) to an fraud claim, including claims under the FCA, is to allow for the development of a defense against a plaintiff's charges, including the filing of dispositive motions or "prepar[ing] an adequate answer from the allegations."  *Moore v. Kayport Package Exp., Inc.,* 885 F.2d 531, 540 (9th Cir. 1989).

Defendant contends that Rule 9(b) requires plaintiff to allege the who, what, when, where, and how of the alleged fraudulent conduct.  Specifically, defendant argues,

> Rule 9(b) is satisfied if the complaint sets forth (1) precisely what statements were made in what documents or oral representations or what omissions were made, and (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) same, and (3) the content of such statements and the manner in which they misled the plaintiff, and (4) what the defendants obtained as a consequence of the fraud.

*United States ex rel. Clausen v. Laboratory Corp. of America, Inc.,* 290 F.3d 1301, 1310 (11th Cir. 2002).  Defendant notes that, in *Clausen*, the court upheld the dismissal of the relator's FCA complaint in an alleged Medicare scheme for "a lack of specific information about the actual

submission of claims to the Government." *Id.* at 1311.  Defendant asserts that the *Clausen* court upheld the dismissal despite the fact that the relator provided in his first and second amended complaints: factual references to actual conversations with specifically named defendant employees; specific descriptions, including technical codes, that were alleged to have been submitted to the Government on specifically described forms; testing histories of three specific patients as examples of how the alleged fraud was perpetrated; and additional details and references to forms that were allegedly falsified by the defendant.  *Id.* at 1304-06.  In addition, defendant points out, the relator in *Clausen* provided with his complaint "dozens of pages of exhibits," including medical tests performed, a roster of employees with alleged knowledge of the fraudulent activities of the defendant, and several other documents presented as potential evidence of the alleged fraud.  *Id.* at 1304, 1312.  Nevertheless, defendant concludes, the *Clausen* court upheld the dismissal of the complaint for failure to plead in accordance with Rule 9(b) because the relator failed "to allege with any specificity if--or when--any actual improper claims were submitted to the Government."  *Id.* at 1312.

According to defendant, plaintiff's second amended complaint falls miles short of the specificity required of the plaintiff in *Clausen* as well as the specificity required by this court.  In making his allegation that McWane sold defective pipe to the federal government, defendant points out, plaintiff states that the pipe was sold "through various distributors" either "directly or indirectly to the federal government," but does not state the name of any specific customer.  Defendant argues that plaintiff failed to identify a single government-project-supplying distributor to whom defective pipe was purportedly sold, much less a federal agency to which the defective pipe was directly sold.  Defendant further contends that plaintiff fails to specify the exact products and dates at issue.

Instead, defendant asserts, plaintiff identifies every single product manufactured by the McWane Pipe facility as possibly having defects.  Similarly, plaintiff references the entire three-year time period during which he was employed at the facility as the "date(s) of sale."  In addition, defendant notes, plaintiff claims that, at "various times" during that period, he "verbally" told several of his supervisors that defective pipe was bing sold to the federal government.  However, defendant argues, plaintiff completely fails to identify who orchestrated the concealment of the defective pipe.  According to defendant, plaintiff also fails to adequately describe how the defects were concealed.[8]

Having now filed three different complaints, plaintiff, defendant argues, apparently cannot satisfy the particularity requirement of Rule 9(b) or provide the minimum information ordered by this court.  To the contrary, defendant contends, the continued overly broad, non-specific allegations in his third complaint demonstrate that plaintiff has no idea whether McWane ever sold pipe directly or indirectly to the federal government.  Instead, defendant maintains, plaintiff is struggling to keep his claim alive to determine if he can manufacture a fraud claim after obtaining discovery.  In support of this argument, defendant highlights plaintiff's allegations that McWane has sole possession of the documents and records listing federal-government-related pipe sales.  Presumably, defendant contends, plaintiff is seeking discovery of documents relating to every pipe sale by McWane during a three-year period.  In doing so, defendant asserts, plaintiff ignores the "clear lesson from the Eleventh Circuit," which is that:

---

[8] Defendant acknowledges that plaintiff gives examples of how aesthetic defects in the pipes could have been hidden at the point of sale.  However, defendant contends, plaintiff fails to give any details of how McWane could have hidden the alleged physical defects in the pipe which would have affected its ability to hold water.  According to defendant, it would not have been reasonable for it to conceal such defects.  Even if it could hide such a defect at the point of sale, defendant asserts, the defect would be immediately discovered when the pipe was put in use, and McWane would have been responsible for replacing it.

> General averments [in FCA claims] do not suffice, no matter how difficult it may be for a relator to meet the stringent requirement of particularity without first obtaining court aided access to discovery materials from defendant. . . . The federal courts are increasingly reluctant to allow fishing expeditions by whistle-blowers employing the FCA and hoping for federal intervention. The whistle must be blown not only loudly, but with Rule 9(b) particularity in the complaint before the courts will listen.

*United States, ex rel. Atkins v. McInteer*, 345 F.Supp.2d 1302, 1305 (N.D. Ala. 2004).

**B.    Rule 12(b)(6) Arguments.**

Defendant further argues that, because of the lack of specificity in plaintiff's second amended complaint, plaintiff's claims are due to be dismissed for failure to state a claim upon which relief can be granted. Defendant asserts that it is left to assume that plaintiff is claiming that the supposed sales of defective pipe through distributors to the federal government violates § 3729(a)(1) of the FCA because his complaint cites to an irrelevant provision of the Act.[9]  Assuming that plaintiff meant to invoke § 3729(a)(1), defendant asserts, this section of the FCA creates a cause of action only if a false claim is ". . . *present[ed]* . . . to an officer or employee of the United States Government or a member of the Armed Forces of the United States . . ." 31 U.S.C.A. § 3729(a)(1) (emphasis added). Moreover, defendant argues:

> This is the unequivocal, up-front language of 31 U.S.C. § 3729(a)(1). In other words, a false claim, if presented to an entity that, in turn, has received or subsequently receives money from the United States with which to pay the claim, is not actionable, despite the fact that the money, in whole or in part, comes from the United States.

*Atkins*, 345 F.Supp.2d at 1304 (citing *United States, ex rel. Totten v. Bombardier Corporation*, 380 F.3d 488 (D.C. Cir. 2004) (*reh'g en banc denied*)). Because of plaintiff's lack of specificity,

---

[9] Defendant notes that Count I of plaintiff's second amended complaint alleges violations of § 3729(7) of the FCA. Defendant points out that, assuming plaintiff meant to cite § 3729(a)(7) of the FCA addressing "reverse false claims," these claims were specifically dismissed with prejudice by this court on January 26, 2005.

defendant contends, it is left with no way of knowing how many intermediaries were allegedly

involved if, in fact, the federal government was the final purchaser of the purported defective pipe.

Therefore, defendant concludes, plaintiff's complaint is due to be dismissed under the analysis in

*Atkins* and *Totten*, because plaintiff has failed to allege that defendant ever actually presented a false

claim for payment to the federal government in return for allegedly substandard pipe.[10]

---

[10] Defendant notes that the courts in *Atkins* and *Totten* both dealt with alleged false
claims made to grantees of federal funds (Alabama Medicaid Agency and Amtrack). *Atkins*, 345
F.Supp.2d at 1504; *Totten*, 380 F.3d at 490. According to defendant, it is impossible to
determine from plaintiff's complaint if the factual circumstances are the same in this case.
However, defendant argues, the complaint must be dismissed if plaintiff is attempting to allege
that McWane sold indirectly to the federal government by selling pipe to a distributor, who sells
the pipe to a contractor, who then sells the pipe to a state or local government entity, such as a
municipality, that may receive some federal funding.

The United States filed a Statement of Interest concerning defendant's argument that
*Atkins* and *Totten* apply to this case. Although it declined to intervene, the federal government
maintains that it retains a significant interest in this proceeding, as it will be entitled to most of
any recovery. 31 U.S.C. § 3730(d)(2). Further, as the United States pursues most of the
successful actions under the FCA, it contends that it has a keen interest in the Act being properly
interpreted.

The United States argues that *Atkins* and *Totten* are not applicable to this case, and that it
is impossible to determine from plaintiff's complaint if the factual circumstances are the same
here as in those two cases. The United States further asserts that it believes *Atkins* and *Totten*
were wrongly decided and misinterpret the relevant provisions of the FCA. The federal
government notes that, although rehearing en banc was denied by the District of Columbia Court
of Appeals in *Totten*, an appeal has been filed with the Eleventh Circuit in *Atkins*. The United
States asserts that it filed an Amicus Brief in that appeal, arguing, in part, that the Eleventh
Circuit should not follow *Totten*.

Although the United States takes no position on whether defendant's Rule 9(b) motion
should be granted or on the merits of plaintiff's claims, it argues that the Rule 9(b) issue is a
threshold issue that should first be decided by the court. Resolution of this issue, the United
States argues, may render the issue of the applicability of *Atkins* and *Totten* moot. However, the
United States requests the opportunity to brief thoroughly the application of *Atkins* and *Totten* to
this case if the court intends to address defendant's arguments concerning the issue.

In its Reply, defendant expresses its agreement with the government that, if the court

13

**C.      Plaintiff's Retaliation and Wrongful Termination Claims.**

Defendant asserts that, if plaintiff's false claim count is due to be dismissed for either lack of specificity or failure to state a viable claim, plaintiff's retaliation and wrongful termination counts, Counts II and II, are likewise due to be dismissed.   In order for plaintiff to obtain relief under § 3730(h), the whistleblower provision of the FCA, defendant contends, he must prove that he engaged in protected conduct and that McWane retaliated against him because of that protected conduct. *Mann v. Olsten Certified Healthcare Corp.,* 49 F.Supp.2d 1307, 1313 (M.D. Ala. 1999). Additionally, defendant asserts, the plaintiff's conduct must be "in furtherance" of an "action" under the FCA.   *Id.*  Defendant maintains that courts have broadly interpreted this requirement to provide protection to plaintiffs as long as FCA litigation was a "distinct possibility" when the plaintiff acted. *Id.  See also Childree v. UAP/GA CHEM, Inc.,* 92 F.3d 1140, 1146 (11th Cir. 1996) (adopting the "distinct possibility" test).   According to defendant, courts also require "that there at least be a distinct possibility that a *viable* FCA action could be filed."   *Dookeran v. Mercy Hospital of Pittsburgh,* 281 F.3d 105, 108 (3rd Cir. 2002) (emphasis added) (citing *Hutchins v. Wilentz, Goldman & Spitzer,* 253 F.3d 176, 188 (3rd Cir. 2001)).   *See also McKenzie v. BellSouth Telecommunications, Inc.,* 219 F.3d 508, 515-16 (6th Cir. 2000); *Eberhardt v. Integrated Design & Const., Inc.,* 167 F.3d 861, 867 (4th Cir. 1999); *Childree,* 92 F.3d at 1146;   John T. Boese,[11] *Civil False Claims and Qui Tam Actions*  4-211 (2004 Supp.).   In other words, defendant argues, there

_____

dismisses the second amended complaint for failure to plead fraud with particularity, it is unnecessary to consider the *Atkins/Totten* argument.

[11] Defendant asserts that John Boese has been recognized as the "leading commentator" on the FCA by the Eleventh Circuit.  *U.S. ex rel. Clausen v. Laboratory Corp. of America, Inc.,* 290 F.3d 1301, 1310 n.16 (11th Cir. 2002).

14

must be a reasonable basis for the underlying fraud claim because the whistleblower provisions of the FCA only protects actions which relate to "an action filed or *to be filed* under this section."  31 U.S.C.A. § 3730(h) (emphasis added).

Defendant concludes that, because the FCA protects plaintiffs only in situations in which litigation under the FCA could be filed legitimately, plaintiff's whistleblower claims in this action under § 3730(h) have no reasonable basis in law and must be dismissed.  Defendant contends that it has clearly demonstrated the plaintiff does not have, and has never had, a viable false claim under any provision of the FCA.

## II.    Plaintiff's Response.

### A.    Rule 9(b) Arguments.

Plaintiff notes that a claim under § 3729(a)(7) requires proof that: "(1) the defendant made, used, or caused to be made or used a record or statement to conceal, avoid, or decrease an obligation to the United States; (2) the statement or record was false; (3) the defendant knew that the statements or record was false; and (4) the United States suffered damages as a result."  *United States ex rel. Stinson, Lyons, Gerlin & Bustamante, P.A. v. Provident Life & Accident Ins. Co.*, 721 F.Supp. 1247, 1259 (S.D. Fla. 1989).  According to plaintiff, the knowledge element is defined in 31 U.S.C. § 3729(b) as follows:

> [T]he terms "knowing" and "knowingly" mean that a person, with respect to information--(1) has actual knowledge of the information; (2) acts in deliberate ignorance of the truth or falsity of the information; or (3) acts in reckless disregard of the truth or falsity of the information.

31 U.S.C. § 3729(b).  The statute states that no proof of specific intent to defraud is required.  *Id.* Plaintiff asserts that mere negligence or innocent mistake is insufficient to satisfy the knowledge

requirement. *United States ex rel. Hagood v. Sonoma County Water Agency,* 929 F.2d 1416, 1421 (9th Cir. 1991). "Rather, defendant must act at least with 'deliberate ignorance' or 'reckless disregard' of the truth or falsity of the information." *Wilkins ex rel. United States v. State of Ohio,* 885 F.Supp. 1055, 1059 (S.D. Ohio 1995). Plaintiff notes that the *Wilkins* court analyzed § 3729(b) as follows:

> Although plaintiff must prove that the defendant acted with knowledge as that term is defined in § 3729(b), plaintiff is not required to prove that the defendant acted with the intent to deceive. The gist of the violation is not an intent to deceive but the knowing presentation of a claim, record or statement that is either "fraudulent" or "false" and the requisite intent is the knowing presentation of what is "known to be false" or "a lie." Thus, the scienter requirement is something less than the elements of fraud at common law.

885 F.Supp. at 1059-60 (internal citations omitted).

Interestingly, plaintiff asserts, the *Wilkins* court also held that even though the amended complaint did not meet the requirements of Rule 9(b), the defendant was not entitled to complete dismissal. 885 F.Supp. at 1060-67. Plaintiff points to the following passage from *Wilkins*:

> The amended complaint does not comply with the particularity requirements of Rule 9(b). Nonetheless, plaintiff argues that he should not be held to the requirements of Rule 9(b) because the information he needs to provide specific information is within the control of the defendants. . . . An exception to Rule 9(b)'s particularity requirement exists where the relevant facts lie exclusively within the knowledge and control of the opposing party. In such a case, pleading upon information and belief is permissible, but plaintiff must still plead a statement of facts upon which his belief is based.

> The court concludes that this is an appropriate case in which to apply the exception to Rule 9(b). Defendants do not contend that plaintiff has equal access to the documents he seeks, and in fact have filed a motion for a protective order to prevent discovery while their motion to dismiss is pending. Rather, they argue that plaintiff should be expected to allege the relevant facts based on memory.

*Id.* at 1061 (internal citations omitted).

Plaintiff acknowledges that Federal Rule of Civil Procedure 9(b) states that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." The Eleventh Circuit, plaintiff notes, has stated that, under Rule 9(b), a plaintiff must plead "facts as to time, place, and substance of the defendant's alleged fraud," specifically, "the details of the defendants allegedly fraudulent acts, when they occurred, and who engaged in them." *Cooper v. Blue Cross and Blue Shield of Florida, Inc.,* 19 F.3d 562, 567-68 (11th Cir. 1994).

Plaintiff asserts that he has met his burden under Rule 9(b). According to plaintiff, his Amended Complaint alleges the "who, what, when, where and how" of defendant's fraudulent conduct. Plaintiff draws the court's attention to the following passage from *United States ex rel. Clausen v. Laboratory Corp. of America, Inc.,* 290 F.3d 1301 (11th Cir. 2002):

> When Rule 9(b) applies to a complaint, a plaintiff is not expected to actually prove his allegations, and we defer to the properly pleaded allegations of the complaint. But we cannot be left wondering whether a plaintiff has offered mere conjecture or a specifically pleaded allegation on an essential element of the lawsuit.

290 F.3d at 1313. Plaintiff acknowledges that he may not have amended his complaint to fully address each question set forth in this court's January 26, 2005 order. However, he asserts, he has supplemented the complaint to the best of his knowledge.

**B.      Rule 12(b)(6) Arguments.**

Plaintiff notes that 31 U.S.C. § 3730(h) states:

> Any employee who is discharged, demoted, suspended, threatened, harassed, or in any other manner discriminated against in the terms and conditions of employment by his or her employer because of lawful acts done by the employee on behalf of the employee or others in furtherance of an action under this section, including investigation for, initiation of, testimony for, or assistance in an action filed or to be filed under this section, shall be entitled to all relief necessary to make the employee whole.

Plaintiff argues that, in order to prove a violation of § 3730(h), a relator must prove: "(1) he engaged in protected activity, that is, 'acts done ... in furtherance of an action under this section'; and (2) he was discriminated against 'because of' that activity."  *United States ex rel. Yesudian v. Howard University,* 153 F.3d 731, 736 (D.C. Cir. 1998).  To prove discrimination, plaintiff asserts, a relator must show: "(a) 'the employer had knowledge the employee was engaged in protected activity'; and (b) 'the retaliation was motivated, at least in part, by the employee's engaging in [that] protected activity.'" *Id.*

Plaintiff maintains that his Amended Complaint shows that he learned that defendant condoned the alleged violations and that plaintiff feared for his job and his safety.  Plaintiff claims that  he spoke to various media persons about McWane's illegal activity and he was subsequently terminated.  Therefore, plaintiff argues, he has stated a claim for which relief can be granted under § 3730(h).

Plaintiff maintains that *Mann v. Olsten Certified Healthcare Corp.*, 49 F.Supp.2d 1307 (M.D. Ala. 1999) indicates that, should the court grant defendant's motion regarding the § 3730(h) claim, such a dismissal should be without prejudice.  Plaintiff points to the following passages from *Mann*:

> Because the court will grant summary judgment as to Mann's sole federal claim, the court declines to exercise supplemental jurisdiction as to her state-law claims and accordingly will dismiss these claims pursuant to 28 U.S.C.A. § 1367(c)(3), albeit without prejudice to refiling the claims in state court.

49 F.Supp.2d at 1322.

> Under this approach, the court will look for evidence that the plaintiff, either by words or actions, communicated to the employer that she believed that the employer had engaged in illegal or fraudulent conduct involving submission of claims for payment to the government. Such a showing could be made, for example, by evidence that the plaintiff characterized the employer's conduct as illegal or fraudulent or recommended that legal counsel become involved. Accordingly,

contrary to the arguments of the defendants, whether the plaintiff's actions fit within such neat categories as "advocating for regulatory compliance," or "regular job responsibilities" will not be dispositive. Instead, the determinative issue simply will be whether the employer could have, based upon a reasonable interpretation of the employee's conduct, feared that the employee was contemplating taking legal action under the FCA or reporting fraud to the government

. . .

Generally speaking, when an employee informs her employer about the discovery of suspected fraud and the employer takes no action to correct it, the employer has reason to fear that the employee will file a qui-tam action or report suspected fraud to the government, unless the employee by words or actions affirmatively indicates otherwise.

*Id.* at 1314-15 (internal citations omitted).

### III.   <u>Defendant's Reply.</u>

Defendant reasserts its argument that plaintiff has failed to give the "minimum" details necessary to satisfy Rule 9(b) as required by this court's January 26, 2005 order. Defendant contends that plaintiff has not identified one single customer, distributor or federal agency by name who allegedly received defective pipe. Further, defendant asserts, plaintiff has failed to identify a single defective product allegedly manufactured by McWane. Instead, defendant argues, plaintiff described McWane's entire product line (3-inch through 36-inch pipe). Additionally, defendant maintains, plaintiff has not provided a date, a month, a season or even a year when such events purportedly happened. According to defendant, no defendant could respond to or defend itself against such conclusory claims.[12]

Defendant further reasserts its arguments that, if plaintiff's false claim count is dismissed,

---

[12] Defendant argues the situation here is precisely the harm that the particularity requirement of Rule 9(b) is designed to guard against. *See, e.g. Durham v. Bus. Mgmt. Assocs.,* 847 F.2d 1505, 1511 (11th Cir. 1988) (stating, "[t]he particularity rule serves an important purpose in fraud actions by alerting defendants to the precise misconduct with which they are charged and protecting defendants against spurious charges of immoral and fraudulent behavior" (internal quotation marks and citations omitted)).

plaintiff's retaliation and wrongful termination counts, Count II and II, are likewise due to be dismissed.

## CONCLUSIONS OF THE COURT

The court concludes that, in his third complaint, the plaintiff has not alleged his FCA claims with respect to the sale of defective products with sufficient particularity.[13]  Those claim(s) will be dismissed.

As to the retaliation and wrongful discharge claims, the court concludes that the plaintiff never had a viable FCA claim.  For reasons previously stated by this court, the reverse false claim(s) previously dismissed by this court did not provide the basis for a distinct possibility that a viable FCA action could be filed.  Neither do the claims based on undefined purported sales to distributors as to which no claims with a federal agency have been allegedly filed.  No viable or possible claims pursuant to 31 U.S.C. § 3729 have been alleged.  The defendant's motion will be granted.

This 22nd of March, 2005.

**ROBERT B. PROPST**
**SENIOR UNITED STATES DISTRICT JUDGE**

---

[13] Even assuming that selling products to distributors for later sale to federal agencies could fall under the Act.